[Thompson, J.
I do not understand the counsel for . the plaintiff as contending that this instrument is not valid as between the master and slave, and that the slave might not avail himself of it against his master.]
Then, whether the manumission was absolute or conditional, it affected the right of the purchaser. At the expiration of eight years, the slave would become free, "without any further act of the master. The plaintiff had no power or right to sell the slave for life, after he had given him the writing by which he was made free at the expiration of eight years. A consideration to render a contract valid must be such as the party has the power to perform.*
Wherever there is a fraud on the part of the vendor, or a failure of warranty, the vendee may rescind the contract. It cannot be required that he should first pay the money, and then bring his action to recover it back. We consent to try our defence by the test offered by the plaintiff’s counsel; whether, if the defendant had paid the money, he could have recovered it back in an action for money had and received to his use. In Farrer v. Nightingal,† Lord Kenyon said, “ he had often ruled, that where a person sells an interest, and it appears that the interest which he pretended to sell was not the true one; as, for example, if it was for a less number of years than he had contracted to sell, the buyer may consider the contract as at an end, and bring an action for money had and received, to recover back any money he had paid.” “ It is sufficient for the vendee to say, this is not the interest which I agreed to purchase.” The same doctrine was laid down by Lord Kenyon, in Chambers v. Griffiths,‡ and by Lord Eldon, in Curtis v. Hannay.§ The _ , rule is most reasonable and convenient, and is clearly settled by the modern decisions.
Radcliff, in reply,
observed, that he still insisted that the contract between the plaintiff and the slave was void. He distinguished between a manumission in futuro, and a promise to manumit at a future day.
Villenage in England, is not analogous to slavery,
in this country. A villein had many civil rights. He could acquire and hold property; and copyhold tenures were derived from villenage.
In the case cited from Bay's Reports, the agreements were parol; and it shows that a parol promise to manumit a slave is as valid as if it was in writing. If so, then the notice to the defendant of a parol promise was sufficient.
It is found by the verdict of the jury, that the written contract was ■ concealed from the defendant; and such concealment was a fraud. Admitting that the verbal promise of the plaintiff to the slave, was known to the defendant; he might, nevertheless, be willing to purchase for a full price, knowing such a verbal promise was a nudum pactum, and incapable of being enforced at law.
It is said that evidence ought to have been admitted, to show that the condition had not been performed by the slave. But the judge very properly decided that the slave could not be bound by the decision of that fact in this collateral way; but it would still be a subject of litigation between him and his master. A purchaser expects to have a clear and undisputed title; not such a one as may be even questionable in a court of law. No man is bound to purchase a lawsuit.*

Per Curiam.

The covenant of the plaintiff to manumit the negro in eight years, on condition of faithful service, was one that the slave could avail himself of, if the condition was fulfilled. What was said by the court, in’ the case of the negro Tom (5 Johns. Rep. 365.) is to that effect. The statute (24th sess. c. 188. s. 2.) allows *331 the master to manumit his slave “ by any certificate or writingand this was a conditional manumission.
■The manumission does not rest upon the principles of a contract, depending on a consideration, but it is an act of benevolence, sanctioned by the statute, and made obligatory, if in writing.
The question as to the performance or breach of this condition, could not be tried in a suit between these parties; and if it had been tried, it would not have concluded the negro. The defendants would have afterwards remained liable to a new investigation of this fact, at the instance of the negro, when the term of service had expired. If, then, the covenant was unknown to the defendant at the time of the sale, and if, under an ignorance of the writing, he purchased the negro as an absolute slave for life, he had a right to return the negro as soon as the fact was discovered, and rescind the contract. The jury have found the fact of his ignorance of the writing; and the concealment of it from him, when the sale was made, was a fraud that will vacate the contract. The law seems now to be settled, that if a man sells a different interest from that which he pretends, and especially, if the contract be founded in ignorance and fraud, the purchaser of a chattel may return the chattel, if he does it immediately on discovery of the imposition, and thereby rescind the sale. (Curtis v. Hannay, 3 Esp. N. P. Cas. 82. The opinion of Bullere J. in Tower v. Barrette 1 Term Rep. 136. Farrer v. Nightingal, 2 Esp. Cas. 639. Fleming v. Simpson, 1 Campb. N. P. 40. in notes.)
Motion denied.

 2 Lev. 161. 6 Term Rep. 22.

 1 Esp. N. P. Case. 160.

 E b. N. P. Cas. 83.

 Peake’s N. P. Cas. 131.