Judge Marshall
delivered the opinion of the Court
— Judge-Ewing being absent at the hearing, took no part in the decision.
Carter filed his bill against Williams and others, to rescind a contract for the purchase of land from them, on the ground that they had no title, as they had represented, and .that the land was in adverse possession, and the contract therefore champertous and void.
In the articles of sale, the defendants stated themselves to be the owners of the equitable and legal title to Bertrand Ewell’s claim or patent, the whole of which, with some specified exceptions, they sold to the complainant, for fourteen hundred dollars, and bound themselves to make the conveyance when the payment of the purchase money should be completed. The bill was filed before any payment had been made by the complainant; but during the progress of the suit, a judgment was obtained against him for the first instalment, which was enjoined, upon an amended bill.
In their £rst answer, the defendants maintained, that they had a complete conveyance of title from Bertrand Ewell, through John B. Murray &c. to themselves, and exhibited, as evidence of their title, papers purporting to be official copies of deeds from Ewell to Murray, and from Murray to Hughes, &c. But as these deeds were not proved or acknowledged within the time prescribed by law, they showed no title whatever, (Bartlett vs. Blanton, 4. J. J. Marshall, 426;) and the copies exhibited constituted no evidence as against the complainant, even of an equity in the land.
On discovering the utter deficiency of their title, the defendants filed a further answer, which they made a cross bill against Murray, the unknown heirs of Ewell *199 &c., alleging the execution of deeds by them, and praying for a conveyance of the title. The proceedings upon the cross bill were such as the statute directs in case of suits against non-residents and unknown heirs, and such as authorized the bill to be taken for confessed at the term at which the cause was heard. But the Circuit Court dismissed the cross bill, without prejudice; rescinded the contract for the land; perpetually enjoined the judgment at law, and gave such directions in the decree as were deemed necessary for placing the parties in statu quo. To reverse this decree, as well upon the original as the cross bill, the record is brought up to this Court.
. A suggestion on the part of the names^nd°residences of other sc^bedk^hebfll as. “unknown ground for Yrute tequirmgprocesg ^arn them1’&e. —it is not sufidismissing36 thh bil1-
f the°rescission of a contract for the purchase oflandj ff the defendant he is then able to make the title, the rescission should be decreed. And though the time stipulated for making the title (as on payment of the purchase money) has not arrived, yet if the vendor has given a bond stating, untruly, that he held the legal and equitable title, such decree is proper. Whenever the vendee finds that the vendor cannot make the title, or cannoi give possession, he is entitled to relief, n
The dismissal of the cross bill was, in our opinion, mi , . . r ’ erroneous. The defendants m the original suit had a right to file and prosecute their cross bill, bringing other parties before the Court, for the purpose of perfecting their title, and as they had made such preparation as the statute requires, they were entitled to a decree for a conveyance. A well grounded belief, that the names and residence of the persons sued as unknown heirs, had in fact become known, might perhaps justify the Chancellor in ordering a complainant to sue out process to the proper county, so that the defendants might have notice of the suit, or that the ground of the order might be removed. But even this power, if it exists, should be exercised with the utmost caution. The dismissal of the bill in this case, without such an order, was not. justified by the statements of the original complainant, suggesting upon information, the names of the heirs of Ewell, and their residence within this state.
The rescission of the contract was, in our opinion, correct. The state of the title, or rather the entire want of title in the defendant, when the cause came on 1¶1 i«. j? to be heard, was, according to repeated decisions oí this Court, a sufficient ground for decreeing a rescission. *200 Gill vs. Corbin, 4. J. J. M. 392; Hyne's Reps. vs. Campbell, 6. Mon. 286, Bolware vs. Craig, Litt. sel. ca. 407; Bartlett vs. Blanton, ubi supra, &c.&c. The fact that the time had not arrived at which the vendors were bound to convey, does not, in this case, present any serious obstacle to the relief sought by the complainant. The vendors had in their bond, represented themselves as owning the legal and equitable title to Ewell’s claim; and as soon as the vendee discovered .that they had no evidence of title, and could furnish no means of gaining possession of the land, he had a right at once to seek the aid of the Court for relieving him from the burthen of a contract the promised benefits of which were, by the default of the other party, entirely denied to him.
'Upon a 'hill for the rescission of a land sale, the ■áecree must be according as the title appears at the hearing', and and though there may be a cross bill in the case, for perfecting the defendant’s title, anda state of pre paration showing that he is entitled to a decree by whichhe will obtain, and be able to make, the title: yet if he goes into trial upon the original bill before he obtains his decree and title upon his cross bill. there must be a rescission, for he is still (at the hearing) destitute of title.
*200 In many cases, as in that now before the Court, the vendee could not recover at law upon the title bond until the purchase money should be entirely paid, while the want of title in the vendor would not avail him as a defence to an action for the price of the land. If the door of a Court of Equity is not to be opened to him, until he has fully performed his contract or until he could recover against the vendor for the breach of his covenant to convey, it will often happen, that his case will be past the remedial powers of the Chancellor.
But it is contended, that as the vendors had, in their cross bill, made out against the defendants in that bill, a case upon which the title should have been decreed, whereby they would have been enabled to convey to their vendee, therefore it was improper to rescind the contract for the want of a title. The answer to this is, that the defendants went to trial upon the original bill, without objection, and before they had obtained a title upon their cross bill, and the Court could not do otherwise 'than to decree according to the state of the title as it then appeared; that although the allegations of the cross bill might have been taken as confessed against the defendants therein, the complainant not being one, they were not evidence against him; nor can he be affected by the error of the Court in dismissing a bill to whichhe was no party; that if the cross bill had not been dismissed,but a decree rendered giving day to make *201 a title, as the original bill came on for hearing at the same time, there would, even in that case, have been no title to exhibit, and the Chancellor would neither have continued the original suit of his own accord, nor have taken the decree in the cross suit as sufficient evidence of title; and finally, that there was ample time after the 'defendants became sensible of the defect in their title, for them to have”proctired a conveyance by cross bill, if they had proceeded with reasonable diligence; and that although when the vendee desires a specific execution, the Court may, and perhaps ought to wait upon the cross bill for a reasonable time, the cash is very different when the vendee seeks a rescission, and the state of the title appears to be materially variant from what it was represented to be by the vendor.
Where the complainant seeks a a specific execution — or where the defendant has a clear equity, time may be allowed him to complete his title; not where the bill is for a rescission, or where it appears that defendant made false representations of the state of his title.
A rescission may be decreed when it appears that the contract of sale was champertous and void, though the bill was filed on other grounds, and both parties are in pari delicto as to that.
sion is alone a sufficient ground, for the rescission of a contract for the Adverse posses-purchase of land
It is only by the indulgence of a Court of Equity, that a title which ought to have been perfect when the contract was made, but is not perfected until after a suit is in progress for rescission, is permitted to be brought in to prevent a rescission. It is the vendor’s fault, and at his peril, if his title is not perfect and ready to be exhibited at the hearing. Bartlett vs. Blanton, 4. J. J. M. 426. If he shows a clear equity, and there be no other ground for rescission but the want of a formal legal title, the Court, doubtless, would give him a reasonable opportunity for procuring it. But where the title exhibited is neither legal nor equitable; where there has been a lack of diligence in taking steps to procure a title, and where there are other difficulties in the way of a specific performance, there can be no reasoftable ground for extending or for claiming indulgence.
It is admitted by the defendants and proved by witnesses in this case, that the land sold, or considerable portions of it* was in adverse possession at the time of the contract, and we have no doubt that the sale falls within the denunciation of the statute of January 7th, 1824, against champerty, and is therefore void. It is contended, however, that as the complainant also knew of the adverse possession, he is in pari delicto as to any *202 violatoin of the statute, and shimld therefore be left to his remedy or plea at law, for protection against the enforcement of his part of the contract. It is enough to say, that, although probable, it does not clearly appear that the complainant was apprised of the fact of adverse possession, and that even if it did appear, as there were other grounds for coining into equity, arising from the state of the title, the Chancellor having possession of the case, and perceiving that the contract is declared void by the statute, might decree on that ground alone, though the other had been removed before the hearing. The decree of the Circuit Court appears on its face to have been predicated principally, if not exclusively, on the fact of adverse possession, and tve do not see that it could have been pronounced to be erroneous if it stood upon no other ground. We see no sound reason for making any distinction upon the point of jurisdiction, between a case of champerty and a case of usury, and other contracts, which, being against the general policy of the law, and also expressly, interdicted and declared void by statute, are yet acknowledged to be within the concurrent jurisdiction of the Chancellor.
The patties are 'to be placed in statu quo upon the rescission of a contract; but ■where this rule cannot be literally complied with, a substantial compliance may do: as where a party claiming a tract of land, sold a small part of it, on credit, and then the remainder to another purchaser; the latter wanting the whole, the vendor lets him have the notes of the first purchaser, who gives up his part; takes up his notes, and destroys them.— The vendor’s ti-tie proves bad, and the contract is rescinded: the notes cannot be restored; but the land (for which they were given) may be re-conveyed to the original vendor; and that is suf ficient.
*202 The defendants counsel urges as an objection to the decree, and perhaps toa rescission, that the defendants are not, and cannot be placed in stain quo; that having sold a small portion of the land in Ewell’s patent, to Michael Creekpaum, and taken his notes for the purchase, they transferred these notes to Carter, by their ■contract with him, and Carter having given them up to Creekpaum for his contract of purchase, these notes were not, and could not be, decreed to be re-delivered to the defendants, and that no compensation has been allowed for them. To this objection, we can yield but a partial concurrence. By the contract with Carter, the defendants not only transferred to him the notes of Creekpaum, and made them a part of the consideration of Carter’s note to them, but expressly authorized him to exchange these notes with Creekpaum, for the evidence of his purchase, and agreed, upon his doing so, and surrendering to them their contract with Creekpaum, to convey that land with the rest to Carter. The *203 exchange thus authorized having been made, the contract between the defendants and Creekpaum, was thereby virtually rescinded, under their authority, and the land they had sold to him being provisionally embraced by the contract with Garter, is to be considered, after the exchange, as if it had not been originally excepted from the sale to Carter. The defendants do not, it is true, and cannot, receive from Carter the notes of Creekpaum, which they held before the-sale, but they may receive from him the land for which those notes were given, and they are not entitled to both. The only difference seems to be that they have been subjected to but one suit for a rescission, instead of two. And if the decree provides for re-investing them with such title to the land sold to Creekpaum, as they had before his purchase, they would, in our opinion, have nothing to complain of on that score.
But in this respect, as we conceive, the decree has not required all to be done that might and should have been done, to re-instate the defendants in their title. It appears that their sale to Creekpaum was perfected by a formal deed, instead of being evidenced, as they seem to have supposed, and have stated in their contract with Carter, by their bond for a title. This deed was assigned by Creekpaum to Carter, and being filed by him in the cause, the decree provides that the defendants have leave to receive it back, and withdraw it from the files, upon leaving a copy. There should have been a re-conveyance of the title from Creekpaum, which, as he was a party, might have been decreed. The defendants have a right to be placed beyond the reach of any possible claim growing out of their deed to Creekpaum, and to have the most unequivocal evidence that they have been restored to their title, as they had it before that deed was executed, and that it is no longer obligatory upon them, as such evidence is not afforded by the provisions of the decree, it is therefore, in this respect, er-x-oneous.
Wherefore, for this error, the decree upon the original bill is x-eversed, and the cause remanded, that a decree may be l’endered in accordance with the foregoing di *204 rections; and the decree upon the cross bill is also reversed, and the cause upon that bill, is remanded for further proceedings in conformity with the opinion herein expressed upon that subject.