## DECEMBER TERM, 1843.

### David S. Stacy, Administrator of Charles S. Lee (Deceased) *v.* Samuel Barker, *et al.*

In a bill filed to foreclose a mortgage, upon property which has passed by sale from the mortgagor into the possession of third persons, it is not necessary to allege, in the bill, that the persons in possession had notice of the mortgage.

That a party is a *bona fide* purchaser without notice is purely a matter of defence, and must be set up by the party who would avail himself of it, whether notice be charged or not.

Where a bill is filed to enforce a mortgage on property in the hands of persons in possession of the property, by title derived from the mortgagor, the allegation that they hold by " *a pretended purchase*," is equivalent to a charge of notice of the mortgage.

Where property at a probate sale is sold in Louisiana, as the property of the succession and the community of the deceased husband and of his wife, and a mortgage is taken to secure the purchase-money; in a bill filed by the administrator of the husband in Mississippi, to foreclose the mortgage, on the property which has been removed into Mississippi, the wife of the intestate is a proper party.

The complainant, administrator of Charles S. Lee, residing in Louisiana, alleges that Lee departed this life in Mississippi, in 1836, leaving a large estate of movables and immovables in Louisiana, as also some estate in Mississippi. That on the 23d July, 1840, complainant was appointed administrator of said Lee, by the Probate Court of Concordia, in Louisiana, and qualified and took the oaths, &c.; and that at the March term, 1841, of the Probate Court of Adams county, Mississippi, he was duly appointed administrator in this State. Complainant alleges that, prior to the grant of letters of administration to him as aforesaid, a sale of a certain portion of said estate was made on the 29th March, 1837, by virtue of an order of the Parish Court of Concordia ; that in said order, said estate was described as belonging to the succession of the said Charles S. Lee, deceased, and to the community theretofore existing between him and his wife, Mrs. Ann Lee, residing in said parish; that at said sale, the negroes, Ephraim, Myers, Peter, Jones, Jim, Harrison, David, Washington, Oscar, Charles, and Jerry, Kendrick, were purchased by Samuel Barker, on the terms made known at said sale, and referred to hereafter, at the following prices: Ephraim,

$1500; Peter, $1960; Jim, $1625; David, $1125; Washington, $1785; Oscar, $1915; Charles, $1645; Jerry Kendrick, $625, amounting in all to $12,180. That said sale was made on the following terms : " 7 per cent. of the amount of the purchase-money, cash on the day of sale—the balance in four equal annual instalments ; the purchasers to give their promissory notes with at least two approved indorsers, and a special mortgage reserved upon the slaves until final payment ; all of said notes to be payable at the office of the Judge of the Parish of Concordia, and to bear interest at 10 per cent. per annum after maturity ; it being understood, however, that the payment of 10 per cent. is not to give the purchasers the right of delaying payment after maturity— one fourth to be payable in one year, another in two years, another in three years, and another in four years, from the date of sale."

That Barker was present at the sale and paid 7 per cent. on his purchase, and executed his four promissory notes, payable one, two, three, and four years after date, each for the sum of $2,831·85, at the office of the Parish Judge aforesaid, to the order of Walter Smith, and by him, Alexander L. Russell and A. G. Berren, indorsed ; which said notes were *paraphed* with the act of mortgage, which was then and there executed by said Barker and his securities, for the purpose of securing said promissory notes, and were duly and legally acknowledged and recorded in the Parish of Concordia, according to the laws of Louisiana.

Complainant alleges that conventional interest of 10 per cent. is lawful in Louisiana ; that by virtue of his appointment of administrator, and the transfer to him by the Parish Judge, he has become the lawful holder of said notes ; that payment has been demanded and refused, and the notes duly protested, &c.; that Barker, without authority, and without the knowledge or consent of complainant, or of the Judge of the Parish of Concordia, fraudulently removed the slaves purchased by him, into the county of Jefferson, Mississippi, where they remain, except one who has died, and one who has gone to parts unknown ; that Barker is insolvent, and has gone to parts unknown ; that Smith has gone to Texas, and that Russell and Berren reside in Louisiana, and are insolvent. That by virtue of the non-payment of said notes, the right of complainant to have

the slaves aforesaid sold to satisfy said notes, became absolute ; that, of the slaves so mortgaged, Jim, Harrison, Washington, Charles, and Jerry, Kendrick, are in the possession of John Hall, in Jefferson county, as agent of the New Orleans Canal and Banking Company, who claim to hold them under a pretended purchase from Barker ; that Ephraim, when last heard from, was in the possession of G. J. Martin, in Jefferson county, who also claims under a pretended purchase from Barker ; that Oscar is in possession of Samuel Scott, of Jefferson, and that his name has been changed to Mitchell ; that David is in possession of Lewis W. Dangerfield, of Jefferson, both of which said Scott and Dangerfield claim to be purchasers from Barker ; that the other slaves are either dead or removed to parts unknown, &c.

Complainant charges that Barker had no right to sell the slaves, or any of them, and that his attempt to do so was a fraud upon complainant, and upon the mortgage, which was notice to all the world ; and that all such pretended sales are void.    That said slaves would not now sell for half the sum due, and that the parties, in whose possession they are, refuse to deliver them up.    It prays for *subpœna,* answers, and injunction to restrain the removal of the negroes, &c., and for a foreclosure and sale of the mortgaged negroes, &c.

To this bill, the defendants, Dangerfield and Scott, demurred for five causes.

*First.*    That the complainant did not allege whether he claimed the right to recover as administrator, under the authority of the Probate Court of Adams county, or under the authority of the Judge of the Parish of Concordia.

*Second.*    That the complainant did not allege that the promissory notes mentioned in the bill, are the property of the estate, or that he is entitled as administrator of the estate to demand and receive their payment.

*Third.*    Because he hath not shown or alleged how much of said notes is due the succession of Charles S. Lee, and how much the community in which Mrs. Lee is interested.

*Fourth.*    Because Mrs. Lee is improperly made a party defendant to the suit.

*Fifth.*    Because the bill does not allege that the defendants,

Scott and Dangerfield, are not purchasers for a valuable consideration without notice of the mortgage.

*Ellett* and *Coleman*, for Scott and Dangerfield.

The defendants Scott and Dangerfield demur to the bill ; and the ground mainly relied on is, that the bill does not show that they are not purchasers for *valuable consideration*, or that, at the time they respectively purchased the negroes in their possession, they had notice of the existence of the mortgage in Louisiana.

The bill alleges that Barker, after his purchase at the sale in Louisiana, fraudulently removed the negroes to Mississippi, and that Scott and Dangerfield respectively, hold under pretended purchases fro·n Barker.

It is contended that they purchased the property discharged from the lien of the mortgage, unless it had been lodged for record in the proper office in this State, or notice of its existence is charged upon them.

Purchasers for valuable consideration, without notice, are the objects of the special favor and protection of courts, both of law and equity, and all purchasers are presumed to be of this description, unless the contrary is shown by him who seeks relief against them.

Our laws give effect to mortgages and deeds of trust, only from the time when they " *are delivered to the clerk to be recorded.*" How. and Hutch. Djg. 344, sec. 5.

And " every deed respecting the title to personal property, which by law ought to be recorded, shall be recorded in the court of that county where the property shall remain." And in case of removal to another county, by permission of the owner, shall be recorded in that county within twelve months, or be void as to purchasers, &c., ib. sec. 4.

The provisions of the act are rigid, and plainly indicate the settled and cherished policy of this State on the subject — a policy as wise as it is severe in its exactions.

The present mortgage can only be sought to be enforced, in the face of this statute, upon the principle, that, by the comity of nations, the law of the domicil of the party, or the *lex loci contractus*, where the contract is not made at the place of domicil, is per-

mitted everywhere to govern the construction of contracts in relation to *movable property*.

This rule does not apply to *immovable property*, whether its location is real or *only fictitious*.     Story's Confl. 305, § 371.

Whatever law is adopted, the *whole law* must govern — in regard to *what is movable property* as well as in regard to the proper construction and effect of contracts relating to it.

By the law of Louisiana, slaves are *immovable property*.     Civil Code, p. 68, art. 461.

Recurring then to the laws of Louisiana, for the construction of this contract, we find that it was a contract respecting *immovable property*, which, by the comity of nations, can have no operation *in rem* beyond the jurisdiction in which the property was situated at the time of the contract.     Story's Confl. 303—307 ; *Robinson* v. *Bland*, 2 Burr. 1079.

But it is not so clear, that, even in regard to movable property, the Court ought to give effect to a priority obtained under foreign laws, against purchasers or creditors, in the county where the property is subsequently found.     Judge Story says, there is *"no inconsiderable conflict of opinion"* on the subject.     Confl. of L. 336, § 402 a.

The Court would, therefore, seem to be at liberty to adopt the conclusion, that may appear most enlightened and salutary.     And in view of the spirit and policy of our registry act, it is thought the Court ought not to hesitate in adopting such a rule as will best give effect to that policy.

Again — " When the *lex loci contractus*, and the *lex fori*, as to conflicting rights acquired under the laws of different States, come in direct collision, the comity of nations must yield to the positive law of the land."     2 Kent, Com. 461, 3d ed.

Such is the case now under consideration.     The parties have conflicting rights, acquired under the laws of different States, and the complainant's claim can only be sustained at the expense of the positive law and settled policy of this State.

Real estate can only be conveyed or charged according to the law of the place where it is situated.     If a particular mode of transferring personal property was required to be observed in this

State, it would be as necessary to pursue it, as it is to observe the forms of the law in the sale of real property.

This principle is settled by the Supreme Court of Louisiana. The law of that State requires a delivery of possession of personal property in order to a transfer of title as between the parties. The law of Virginia does not. A person domiciled in Virginia, there sold a ship, which at the time was in New Orleans. Subsequent to such sale and before possession was delivered, a creditor in New Orleans attached the vessel, and the Court refused to give efficacy to the sale in Virginia, because it was not perfected as required by the laws of Louisiana. *Olivier* v. *Towns*, 14 Martin, 93.

Our statute has not provided any form to be observed in the *sale* of chattels, but it has enacted, that " *all mortgages*," whether of real or personal property, shall take effect, against purchasers, *only* from the time of delivery to the clerk for record ; and, in reference to deeds respecting the title of personal property, which by law ought to be recorded, has required the record to be made in the county where the property shall remain.

The registry acts are designed for the benefit of purchasers, to give notice of incumbrances. To give effect to a foreign unregistered incumbrance, against creditors or purchasers in this State, would confer upon strangers privileges denied to our own citizens, and would greatly impair the beneficial operation of the law.

No diligence could have discovered this mortgage. The records were silent. It slumbered four years in another State, and is now brought forward to defeat the rights of those who purchased in ignorance of its existence.

It is therefore submitted, that the demurrer to the bill ought to be sustained.

*Sanders* and *Price*, for complainant.

To the first objection, we reply, that the bill shows he was lawfully appointed administrator of Lee, in Louisiana, to whose succession the notes and mortgage unquestionably belong, and by his showing the letters of administration, and his qualifying as such, in this State, which is but ancillary to his appointment in Louisiana,

his right to sue here as administrator of said Lee, for the specific debt secured by said slaves, which pertained to the succession in Louisiana, is made manifest ; the several grants are but the acts of different sovereignties confirming the general right and title of administrator, and in this Court constitutes a unit, and which can only be questioned by plea, verified by oath.   See How. and Hutch. p. 595, sec. 32 ; Story's Confl. of Laws, p. 422, § 513.

To the second, we say the whole bill exhibits a statement of facts, showing the said notes and mortgage to be the property of said estate of Charles S. Lee, and that he, as administrator thereof, is entitled to receive the payment.   (See p. 4, and the latter part of page 5, of bill.)   By the laws of the State of Louisiana, the Parish Judge makes inventories of successions of deceased estates, and after the inventories are furnished, he names an administrator to manage the property thereof, and obliges him to give good and sufficient security for the fidelity of his administration.   See Civil Code of Louisiana, title Succession — particularly articles 1033 and 1034.   The administrator thus chosen has the same powers, and is subject to the same duties and responsibilities, as the curators of vacant estates, under certain modifications.   Same book, art. 1042.   Curators of vacant estates are bound to take care of the effects submitted to them, as prudent administrators, and to render an exact and faithful account of the revenues they produce. The curators of vacant successions and of absent heirs, act in their names and quality, in all contracts or other proceedings in which the succession, or the heirs which they represent, are interested ; and appear in all suits, in which they are obliged to act in that capacity, either as plaintiffs or as defendants.   Same book, articles 1140 to 1146.

In Louisiana, the administrator represents the movable, as well as immovable, property, and the heir has no interest until he accepts the succession, for he may renounce it.   Same book, title Succession ; also, Story's Confl. of Laws, pp. 417, 418, and 419.

To the third and fourth, we say : in this proceeding, the whole property claimed belongs to the succession of Charles S. Lee. The community is an incident growing out of it, regulated and governed by the peculiar laws of Louisiana.   The making Mrs.

Ann Lee a party, was because, in the process verbal of the sale and mortgage, the property is described as it is in the bill, " as belonging to the succession of the said Charles S. Lee, deceased, and to the community heretofore existing between him and his wife, Mrs. Ann Lee." (See page first of Exhibit C.) Succession is the transmission of the rights and obligations of the deceased to his heirs. Civil Code, art. 867. Community property consists of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estates which they may acquire during the marriage, either by donation made jointly to them both, or by purchase, or in any other similar way, even though the purchase be only in the name of one of the two, and not of both ; because, in that case, the period of time when the purchase is made is alone attended to, and not the person who made the purchase. Same book, sec. 4, and particularly article 2371.

The principle is too familiar to require authorities, that all persons in interest, made to appear so by the bill, or any exhibit, are necessary parties. If she chooses, she can assert her community here, or abide her rights in Louisiana.

To the fifth, we reply, that the demurring defendants must look to those from whom they purchased, for protection ; they are in no better condition than their supposed vendor, Barker. The bill, however, does not admit or deny a purchase of said slaves by defendants ; it only alleges that they hold, under some pretended purchase, from Barker. It charges, that the negroes were mortgaged in Louisiana, and were removed to this State without his knowledge or consent, and without the knowledge or consent of the Parish Judge — who made the sale with special mortgage. The complainant in this case did not know the slaves were in Mississippi, they were unlawfully moved into it ; the mere introduction of slaves into the State, without the knowledge or consent of the owner, effects no change of property. The rights of the parties at the place from which they were removed remain the same, until time, and time alone, interposes a bar to their recovery. Whatever force the ob-

Stacy *v.* Barker, et al.

jection may have upon the transmission of property in this State, on general principles, it can have none in this case.

The defendant's solicitors have, in their brief, taken other objections than those contained in the demurrer; which we, however, regard as alike untenable, if no other objection existed against them.

The first is, that the mortgage set up by complainant was not recorded in this State. Neither law nor equity require unreasonable things. If Barker, the purchaser with special mortgage, removed the slaves from Louisiana to this State unlawfully, and without the knowledge or consent of the complainant, or of the Parish Judge (who alone represented the succession of the deceased), how preposterous, to require that they should have the mortgage recorded here! Upon the same principle, if any felon were to steal, or debtor run off, with property from a sister State, which had been incumbered by, or conveyed in, mortgage, and bring it here and sell it for a valuable consideration without notice, such purchaser could hold against the rightful owner, unless he could keep pace with the felon or fleeing party. We know of no such rule or principle.

The authorities referred to by defendant's counsel, in regard to the conflict of laws, can have no application to this case, for there is no conflict in the case; the complainant shows a perfect title or right, save the equity of redemption of defendant 'Barker. They hold under him, and in equity are subrogated to his rights; beyond that, if the allegations of complainants' bill, are true, which are admitted by the demurrer, they have none. We therefore insist that it be overruled, and that they be required *to answer* within reasonable time.

CHANCELLOR. The only facts which I deem it necessary to notice, in connection with the demurrer, are these. In the year 1840, Charles S. Lee died in this State, leaving a large estate, situated partly in this State, and partly in Louisiana. The complainant took administration upon said estate, both here and in Louisiana. A number of negro slaves belonging to said estate, were sold by the order of the Probate Court of the latter State, at which sale

the defendant Barker became a purchaser to the amount of upwards of twelve thousand dollars, and gave his several promissory notes thereon, together with what, by the laws of that State, is called a *special* mortgage, to secure the payment of the notes. The bill states the failure of Barker to pay his several notes, and alleges that he fraudulently removed the slaves so purchased and mortgaged, into this State, and that some of them are now in the hands of the other defendants, who claim them by virtue of some *pretended* purchase from Barker, and prays that the mortgage may be enforced against the slaves, so transferred by Barker. The defendants, Scott and Dangerfield, have demurred, and have assigned different causes. The one principally relied on, is, that the bill does not allege that these defendants had any notice of the existence of the mortgage at the time of their purchase. This, I apprehend, was altogether unnecessary. It is sufficient that the complainant shows the existence of a mortgage upon the property ; his rights to enforce it will be presumed, until the contrary is shown. That a party is a *bonâ fide* purchaser, without notice, is purely a matter of defence, and must be set up by the party who would avail himself of it ; whether notice be charged on the other side or not. *Gallatian* v. *Cunningham*, 8 Cow. 374. I apprehend that it is not necessary for the complainant, in such cases, to charge notice before it is denied on the other side ; but if it were otherwise, I should be inclined to regard the allegation, that the defendants hold by a *pretended* purchase, as equivalent to such a charge. What would be the effect of such a defence, in a case so peculiarly circumstanced as the present, is a question about which it is unnecessary to intimate any opinions in the present aspect of the case. I have no doubt, that, so far as the complainant's title to sue is concerned, he shows sufficient to authorize him to maintain the suit in his character of administrator in this State. I have as little doubt, that Mrs. Lee is a proper party to the bill. Let the demurrer be overruled, with leave to the defendants to answer in thirty days.