## DAVIS VS. TARWATER.

A deed, sufficiently formal as a deed of conveyance, with *habendum* clause, declaring that the grantee shall have and hold the lots and appurtenances to his heirs and assigns forever, but with a covenant to make a good and sufficient deed with warranty of title when required, is a present conveyance of the fee, with a covenant for further assurance, and not a mere agreement to convey.

Upon a bill in equity by the purchaser of real estate for the rescision of the contract of sale and re-payment of the purchase money, the complainant must show a surrender of the property, or an offer to surrender it to the person entitled, and that the vendor can be placed *in statu quo*. The allegation that he had "abandoned and yielded the possession of the land," is insufficient.

A complainant, who seeks the rescision of a contract, must do so in a reasonable time: and so, after more than ten years had elapsed from the date of the contract, and five years after the discovery of the imputed fraud, a court of equity will refuse to rescind the contract.

*Appeal from Hempstead Circuit Court in Chancery.*

Hon. JOHN QUILLIN, Circuit Judge.

PIKE & CUMMINS, for the appellant. On the point that the instrument executed to Tarwater, was a conveyance *in presenti*, and not a covenant or bond to convey in future, cited *Chiles vs. Conely's heirs*, 2 *Dana* 21; *Jackson vs. Bladjet*, 16 *J. R.* 172; *Jackson vs. Kipelbrack*, 10 *J. R.* 336; *Fisdale vs. Essex*, Hob. 34; *Baxter vs. Brown*, 2 *W. Bla.* 973; *Jackson vs. Delacroix*, 2 *Wend.* 433.

CURRAN, for the appellee. The words used in the deed: "bargained and sold, conveyed and confirmed," do not import a covenant of warranty. The statute, (*Digest*, 264, *s.* 1,) merely provides that the words "grant, gargain and sell," shall be a covenant of seizin in fee, free from incumbrances; *Gee vs. Pharr*, 5 *Ala.* 586; and the statute being in derogation of the common law,

must be strictly construed. Although there be words of conveyance *in presenti*, in a contract of purchase and sale of lands, still if from the whole instrument it is manifest that further conveyances were contemplated by the parties, it will be considered an agreement to convey, and not a conveyance; and the intention is clear, from the stipulation, that Davis should, "when required, make a deed in fee simple with covenants of warranty." *Jackson ex dem. vs. Moncreif*, 5 *Wend.* 26; *Smith vs. Robinson*, 13 *Ark.*; *Ives vs. Ives*, 13 *J. R.* 235.

Hon. S. H. HEMPSTEAD, Special Judge, delivered the opinion of the Court.

The first enquiry to be made, is, whether the instrument, executed by Aquilla Davis to George T. Tarwater, on the 19th of January 1839, was a conveyance of the four lots adjoining Spring Hill, or only an agreement to convey; in other words, whether the contract was executed or executory.

The intention, when apparent, and not contrary to any rule of law, will control; because the intent, and not the words, is the essence of every contract. In the construction of deeds, we are to consider the entire instrument, and not merely any particular part of it; and such exposition should be given, as that every part of a deed may, if possible, take effect, and every word operate. 3 *Johns.* 394; 16 *Johns.* 178; 2 *Bl. Com.* 379.

The mere form of an instrument is not material, (2 *Sumner* 490,) and KENT says, a deed would be perfectly competent, in any part of the United States, to convey the fee, if it should be to the following effect: "I, A. B., in consideration of one dollar to me paid by C. D., do bargain and sell to C. D., and his heirs, the lot of land; (describing it.) Witness my hand and seal." 4 *Kent* 461. Any writing that identifies the parties, describes the land, acknowledges a sale without reservation of the vendor's right, for a valuable consideration, and is signed and sealed by the grantor, is a valid deed of gargain and sale. *Chiles vs. Conely's heirs*, 2 *Dana* 21.

The deed in question, is sufficiently formal. It contained the names of the grantor and grantee, expressed a valuable consideration, used technical words of conveyance fit and appropriate to pass the fee to the vendee and his heirs, and which would have been improper in a mere agreement to convey, and finally contained the *habendum* clause, declaring that the grantee should have and hold the lots and appurtenances, to his heirs and assigns forever. The language used was amply sufficient to convey an estate in fee simple.

The covenant, on the part of Davis, to make a good and sufficient deed with warranty of title, when required, connot certainly be construed so as to convert the whole instrument into an executory agreement, because that would be to destroy a part of it, and thus violate the rule that every part must stand, and every word operate if possible. It is to be regarded, then, as a covenant for further assurance. By placing that construction on the deed, the whole may stand; and this would seem to conform to the manifest intention of the parties.

Although not in form, it is essentially a covenant for further assurance, because the covenantor, to comply with such a covenant, would be obliged, as we take it, to make a deed, answering substantially to the description as contained in that clause.

The covenant, for further assurance, does not prove that a contract is executory: but rather the contrary. The general warranty of title, contained in ancient deeds, has been long disused, and a set of covenants substituted in its stead, which are generally inserted in conveyances, by those who think, with Lord Coke, that it is not advisable to depart from the formal and orderly parts of a deed, which have been well considered and settled. *Rawle on Cov. for Title,* 164, 165.

These covenants are, (1) that the grantor is seized in fee; (2) that he has good right, and full power to convey; (3) that the grantee shall quietly enjoy the premises; (4) that the premises are free from incumbrances; and (5) that the grantor will make further assurance of title; the effect of which is, that the grantor

binds himself and his heirs to make all such further assurances of the land, as shall be lawfully and reasonably required by the grantee, or his heirs. (4 *Cruise Dig.* 408.) And all these covenants are probably contained in most English deeds, where there is not some more limited agreement. They pertain to complete conveyances of the fee *in presenti*, rather than to executory agreements.

Under our statute, the words "*grant, bargain and sell,*" import the first four covenants above named, unless limited by express words. *Digest*, 264.

The case of *Jackson vs. Blodgett*, 16 *John*. 173, is a very strong one to support this deed as a present conveyance, and is directly to the point in hand. In that, the instrument in the form of a bond, conveyed the land for the consideration therein expressed, using the terms grant, bargain and sell, and then a clause was inserted to the effect, that the vendor should, by a legal conveyance in the law, convey the land to the vendee and his heirs and assigns, as soon as he should be vested with the title. The court held the instrument to operate as a present conveyance, SPENCER, C. J., in his able opinion, citing various authorities, amply sustaining that view of the case, and moreover showing that it was conformable to reason. The doctrine as to leases, was referred to by way of illustration, and it was said that when there are apt words of present demise, and to these are superadded a covenant for a further lease, the instrument is to be considered a lease, and the covenant as operating in the nature of further assurance. 10 *John*. 337; 5 *Term Rep*. 165; *Cro. Car*. 207.

Perhaps the best proof that the parties intended this deed to operate as a present conveyance, is, that no period was fixed when the deed, alluded to in the clause, was to be made. It was only to be done when required, thus evincing that the vendee was quite willing to rest, for the present at least, on the deed he had received with the possession; leaving it to future events to determine whether it would be necessary to make the demand or not;

37BB

and which in point of fact never has been made at all, unless we are to consider this suit as a sufficient request.

Considering this deed, then, in all its parts, and to give effect to the whole, there can be but little, if any doubt, that it ought to be held as a present conveyance of the fee, with a covenant for further assurance, and not as a mere agreement to convey. When this same instrument was before this court, in an action of covenant between the same parties, (2 *Eng. R.* 153, 157,) it was not deemed essential to determine whether it was a bond for title, or deed conveying the lands therein described; the court remarking, however, that "were it necessary, they did not conceive that it would be difficult to show that it was a deed of conveyance, with a covenant to execute, upon request, a good and sufficient deed in fee simple with warranty of title."

Inasmuch as the incumbrance, created by the mortgage to the Real Estate Bank, cannot be removed at present, this bill has for its scope and object, the rescission of the contract of sale between Davis and Tarwater, and the repayment of the purchase money, with interest to the latter. Passing several interesting questions discussed by counsel, we are to enquire whether Tarwater is in a position to demand rescission, because if he is not, it would be quite useless to ascertain in what cases, and for what causes an executed contract may be rescinded.

There are two obstacles in the way of the relief sought by the bill; first, that it does not appear that the vendee ever surrendered the land, or gave notice of an intention to abandon the contract; and second, lapse of time.

The language of the authorities is uniformed, that he who seeks the rescission of a contract, must be in a situation to restore to the opposite party whatever he may have received from him; or, as more briefly expressed, he shall put his adversary *in statu quo.* This is the dictate of natural justice, as well as a clear principle of law. If the vendor cannot be placed *in statu quo,* the contract cannot be rescinded. And the rule is the same, whether the rescission is sought on the ground of fraud, mistake, or for any

other cause. *McDonald vs. Fithian*, 2 *Gilman* 269; 13 *Ark.* 182; *Cunningham vs. Fithian*, 2 *Gilman* 651. In the case of the rescission of a contract, it is well settled, says the court in *Griffith vs. Depew*, 3 *A. K. Marsh.* 180, "that the court ought to place the parties back *in statu quo*, as near as can be equitably done; that the vendor ought to refund the money with interest, and the vendee ought to restore the subject purchased with rents, and payment for waste, receiving credit for the valuable and lasting improvements he may have made. *Williams vs. Carter*, 3 *Dana* 201; *Caldwell vs. Caldwell*, 1 *J. J. Marsh.* 53.

In personal property, the rule is the same in actions at law. As where goods do not correspond with the order given, or with the sample, or are unsound, the purchaser ought immediately to return them back to the vendor; or give him notice to take them back, and thereby rescind the contract. Without this, he can not rescind the contract and recover back the price, (2 *Kent* 380 ; 1 *H. Bl. Rep.* 17 ; 1 *Term Rep.* 133) although he may sue for a breach of warranty without returning the goods. A party defrauded in a contract, has a choice of remedies : he may stand on the bargain and recover damages for the fraud in an action at law; or he may rescind the contract and return the goods bought, and receive back what he paid or sold. *Campbell vs. Fleming*, 1 *Adolph. & Ellis* 40. And this doctrine as to placing parties *in statu quo*, as nearly as possible, conforms to the civil law; and the application of a vendee to a court of equity to rescind a contract of sale, closely resembles the rescissory action of the civil law on the part of the buyer. The object of this action is to rescind the contract of sale, and it cannot be commenced but by virtue of letters of rescission obtained in chancery, by which a recission is directed, if the injury set forth by the buyer shall appear to the judge.

The seller must render to the buyer the price which he has received, upon condition that the latter render him the estate sold; which must be restored in the condition in which it was found; with all the augmentations subject to the contract, whether natu-

ral or alluvious, or artificial, as buildings erected upon the land. The seller, however, must make allowance for necessary repairs and erections, and the buyer is liable for rents and profits. *Pothier on Contracts of Sale, part 5, c. 2, sec. 374, 381, 382.*

The duty and obligation of vendor and vendee, do not differ essentially, under our system and under the civil law, because under both, the vendee may obtain the purchase money with interest, and must restore the estate. And while he is accountable for rents and profits, he may be reimbursed for necessary repairs and erections, and also for taxes and assessments.

And indeed it would be most extraordinary for any tribunal, professing to dispense equal and impartial justice between man and man, to allow a vendee of an estate to rescind a contract, recover the purchase money back, and neither restore, nor offer to restore, the estate.

Sir EDWARD SUGDEN declares that where one party fails to perform a contract, the other, if he means to rescind it, must give a clear notice of his intention to do so. The case of *Reynolds vs. Nelson*, 6 *Mad. Ch. Rep.* 19, is to the same effect. 1 *Sugden on Vendors*, 279, 382; *Hunter vs. Geridy*, 1 *Ham.* 449.

And so with regard to a sale of personal property, where there is fraud, the purchaser, if he wishes to rescind the contract, must tender back the property, before he can bring his action at law to recover the consideration. And it is not enough that he give notice to the vendor, and call on him to come and receive his goods; but he must himself return them back to the party defending him, before any right of action accrues. *Bain vs. Wilson*, 1 *J. J. Marsh.* 202; *Stewart vs. Dougherty*, 3 *Dana* 467; *Norton vs. Young*, 3 *Greenl.* 30; *Butter vs. Blake*, 2 *Har. & J.* 353; *Ketletas vs. Fleet*, 7 *Johns* 331. Tender would doubtless have the same effect, and although the rule is less stringent in regard to real estate, yet in chief ingredients it is the same.

In *Murphy vs. Officer*, 8 *Yerg.* 502, it was held that, on rescinding the contract, the purchaser was bound to give up the land;

and until he did so, an adverse title in himself, procured after the decree of rescission, could not be set up by him.

And in *Fitzpatrick vs. Featherstone,* 3 *Ala.* 40, it was expressly held, that a contract for the sale of land could not be rescinded, where the purchaser did not offer to return the land to the vendor.

This principle, so necessary to be enforced in these kinds of suits, is only a counterpart of the maxim, that he who asks equity must do equity.

It may therefore be asserted, as a rule well sustained by reason and authority, that if the vendee has gone into the possession of the estate, and wished to rescind the contract, he must give fair notice of his intention to do so, and must surrender, or offer to surrender the estate to the vendor, or, in case of death, to him on whom the descent is cast. He has no right to abandon it to the mercy of the public without notice, because the inevitable consequence would be waste and dilapidation, even if should escape a sale for taxes, and thus pass beyond the reach of vendor and vendee forever.

If after notice to the vendor, the possession is abandoned, the vendor can see that the land is properly taken care of, and taxes and assessments paid, as they accrue, and if he neglects it, he cannot charge the vendee with unfair conduct. But in the absence of notice, and without the return or offer to return the land purchased, or showing that it can be restored, the vendee comes into a Court of Equity with a poor grace to ask for the rescission of the contract, and under such circumstances is not entitled to it.

And it is for the person asking for the exercise of this highest power of a Court of Equity to show clearly, that he can restore the land on rescission, and that the parties can be placed in *statu quo,* and it is not for the opposite party to show that it cannot be done. 1 *S. & M.* 146. Contracts are not to be annulled on slight grounds, and a clear case must be presented to warrant it. 1 *S. & M.* 443; 3 *S. & M.* 394; 5 *Munf.* 295. Now Tarwarter alleges in his bill that, immediately after he

found that the land was incumbered, and that he had been deceived and imposed on, he "*abandoned and yielded the possession of said land.*" He does not state when, nor to whom, but as he avers that he ascertained in 1845, that the land purchased by him was embraced in the mortgage to the Real Estate Bank, we may infer that that was the time of the abandonment, and that would give six or seven years as the length of his actual possession, according to the showing made by himself. This bill was filed in 1850, and who had the charge or control of the land during the intervening five years, or whether any one had, or whether the taxes were paid, or whether it could be restored when the bill was filed, or the decree pronounced, does not appear, and no notice appears to have been taken of that point by the Court below. The bill does not offer to restore it; nor is there a shadow of proof that any such offer was ever made; and which of itself, according to the case of *Fitzpatrick vs. Featherstone*, 3 *Ala.* 40, is a fatal objection. As all pleadings must be construed most strongly against the party pleading, we must take it that the possession of the land was not surrendered to any one, as it is not stated to whom. It cannot be contended that the surrender was made to the legal representatives of Davis, or his executrix, or that any notice was given to them, or any of them of his intention to abandon the contract. There is not the slightest foundation for such a surmise, and in fact none such has been made. It comes then to this, that Tarwater, choosing to abandon the contract in 1845, left the premises without giving notice to those interested, or offering to surrender the land; and five years after asks a Court of Equity to restore to him the purchase money with interest. It is very clear, from the facts and circumstances of the case, that he is not in a situation to demand it. If he was entitled to a rescission, the Court should have decreed the cancelation of the deed, and the restoration of the land, so as to do full justice between the parties, and the decree is erroneous in any view in which it may be considered. But this form of the

decree is less important, as we do not deem Tarwater entitled to the relief asked.

We now come to consider the effect of lapse of time.

The bill was not exhibited, until more than ten years had elapsed from the date of the contract, and, according to Tarwater's own statement, five years had elapsed from the discovery of the imputed fraud. No excuse is offered for this delay, nor has it been explained.

A complainant who seeks the rescission of a contract, must show clearly the defect in the title, and that there has been fraud, accident or mistake, and the remedy must have been pursued in good time. *Moss vs. Davidson*, 1 *S. & M.* 112; *Flecther vs. Wilson*, 1 *S. & M. Ch. R.* 376, 134; *Pintard vs. Martin*, ib. 126; *Ayers vs. Mitchell*, 3 *S. & M.* 690.

A party seeking rescission, must do so in a reasonable time. *Davis vs. James Exr's.*, 4 *J. J. Marsh* 9; 7 *Johns.* 331.

And in *Lawrence vs. Dale*, 3 *J. C. R.* 42, it was said by chancellor KENT, that if the law allowed a party to abandon a contract while *in fieri*, he ought at least to act promptly and decidedly on the very first discovery of the breach.

The case of *Roach vs. Rutherford*, 4 *Desaus.* 126, is more in point, and in many respects resembles the case at bar. It was there decided, that the purchaser after having remained in possession more than five years without being disturbed, could not resist the payment of the purchase money.

A party has no right to ly by for a long time for the purpose of first ascertaining whether he may not be able to realize a profit out of the contract, nor until the property, by a fall in prices, has greatly depreciated in value, nor until the title to the property by neglect has become doubtful or impaired. 1 *Gilman* 269; 2 *Gilman* 651.

Where a person has been guilty of negligence and slept on his rights, Courts of Equity will refuse to enforce such rights, deeming that the best interests of society require that causes of action should not be deferred an unreasonable time. Since the

decision of this Court in *Taylor vs. Adams*, 14 *Ark.* 62, this can hardly be considered as an open question in this State. It was there said that when a party seeking redress is apprised of his rights, or if they be fraudulently concealed from him, whenever the fraud is discovered, or might reasonably have become known, he must assert his rights in Equity within the period limiting the analogous remedy at law, unless he come within some saving or exception.

And it was also said that the objection that the claim is a stale one, may be taken at the hearing and when such a case is disclosed, the Court may of its own motion deny relief to parties who have slept upon their rights.

Now it cannot be successfully controverted that, if Tarwater had brought his action at law, for the recovery of the purchase money, he would, on his own showing, would have been barred by limitation; so in analogy to the statute, he must be held barred by the lapse of time when he comes into another forum.

Indeed, Equity will sometimes, under peculiar circumstances, hold a party barred of equitable relief when he is not of his legal right. Then it simply withholds its hand, and leaves a party to his remedy at law. *Mason vs. Crosby, Davies R.* 313.

Lapse of time is not founded upon statutory provisions, though the statute may be referred to at fixing a reasonable time for its operation. The rule is applied by Courts on a broad view of all the circumstance of the case. And even in cases where the demand is not barred by positive limitation, Courts of Equity refuse to interfere after a considerable lapse of time, from considerations of public policy and from the difficulty of doing entire justice. Nothing can call a Court of chancery into activity, but conscience, good faith, and reasonable diligence, and where these are wanting, the Court is passive and does nothing. *Piatt vs. Vattier*, 1 *McLean* 164; *S. C.*, 9 *Peters* 415; *McKnight vs. Taylor*, 1 *How. S. C. Rep.* 168.

Without adverting to other errors which exists in the decree, we are satisfied, for the reasons above expressed, that it should be

reversed, and the bill dismissed at the cost of the complainant. Reversed.

Mr. Chief Justice WATKINS not sitting in this case.